The appellant, Derrick Leondray Thompson, pleaded guilty to receiving stolen property in the second degree, a violation of § 13A-8-18, Code of Alabama 1975. He was sentenced to 18 months' imprisonment in the state penitentiary.
The appellant attacks the denial of his motion to suppress evidence resulting from the search of his automobile. A guilty plea waives all nonjurisdictional defects occurring before the entry of the plea. Prim v. State, 616 So.2d 381, 382
(Ala.Cr.App. 1993). The appellant specifically reserved the right to appeal as to this issue.
Officer James Stanley, a narcotics officer with the Dothan Police Department, testified that he and Corporal Governor Jackson were patrolling an area of Houston County known for its drug trafficking activity when he noticed several men standing around a parked car. The men were looking into the trunk of an older model Cadillac automobile. Stanley testified that when the group noticed the police one of the members slammed the trunk lid closed and the group dispersed.
Stanley testified that when he and Jackson approached the appellant, several other men were with him. He stated that when he walked up to the group he saw the appellant drop a set of keys on the ground. Stanley testified that he asked the appellant if the keys on the ground were his keys and he said, "No." Stanley also asked the appellant if the car was his and he said, "No." Stanley then asked the appellant if he knew anything about the car and he said "No, I don't." He further testified that he ran a registration check on the license plate and found that the license plate was issued for another vehicle.
Stanley opened the trunk of the car and found four whitewall tires, on Crager brand wire-chrome custom wheels. The tires had been stolen. The appellant later admitted in a pretrial statement that he owned the vehicle and stated that he had purchased the tires the previous evening.
 I
The appellant contends that the trial court erred by denying his motion to suppress evidence of the tires found by Officer Stanley in the trunk of the Cadillac. Specifically, he contends that the initial stop and the resulting search of the car violated his rights under the Fourth Amendment to the United States Constitution and violated Terry v. Ohio, 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
The appellant contends that the initial stop by Officers Stanley and Jackson was illegal because, he said, they did not have reasonable suspicion to believe that he was involved in criminal activity. In Worthy v. State, 473 So.2d 634, 636
(Ala.Cr.App. 1985), this court summarized the standards set forth in Terry and subsequent cases.
 "In Terry [v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)], it was held that
 " 'where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or other's safety, he is entitled for the protection of himself and others in the area to conduct *Page 1016 
a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.' 392 U.S. at 30, 88 S.Ct. at 1884-85.
 "In order to justify the brief investigatory detention of an individual, a police officer does not have to have probable cause to arrest the person for a crime. Terry, 392 U.S. at 27, 88 S.Ct. at 1883; Spradley v. State, 414 So.2d 170, 173
(Ala.Cr.App. 1982). Although there is 'no simple shorthand verbal formula which can adequately express the grounds for a Terry stop', 3 LaFave, [Search and Seizure] at § 9.3, p. 40, 1985 Pocket Part, 'the essence of all that has been written is that the totality of the circumstances — the whole picture — must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.' United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)."
473 So.2d at 636-37. (Emphasis added.)
Officer Stanley's testimony revealed that his reason for approaching the appellant was that the appellant was in an area known for drug activity and the Cadillac that the appellant was standing by was parked in the driveway of a house that had been the location of a previous drug arrest. The appellant and several others had gathered around the car and were looking inside the trunk. When the group spotted the police, one of the group slammed the trunk lid closed and the group dispersed. Stanley also testified that he recognized a couple of the men standing by the car from previous drug-related arrests. Here the facts were sufficient to satisfy the "reasonable suspicion" necessary for a valid investigatory stop under Terry. Cf. Newv. State, 674 So.2d 1377 (Ala.Cr.App. 1995) (the fact that three white men were driving in a predominantly black neighborhood late at night does not by itself create a "reasonable suspicion"); Childs v. State, 671 So.2d 781 (Ala.Cr.App.), cert. denied, 671 So.2d 783 (Ala. 1995) (man leaning inside a car window in an area of known drug activity does not furnish reasonable suspicion).
The appellant further contends that the trial court erred by denying his motion to suppress evidence of the tires because the officers searched his car without a search warrant and without his consent. To determine whether the appellant has standing to challenge the search under the Fourth Amendment we must first determine whether the appellant had a legitimate expectation of privacy in the object of the search. Rakas v.Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).
 " 'When individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had. United States v. Berd, 634 F.2d 979, 987 (5th Cir. 1981). Therefore, a warrantless search or seizure of abandoned property is not unreasonable under the Fourth Amendment. [Citations omitted.] The existence of police pursuit or investigation at the time of abandonment does not of itself render the abandonment involuntary. United States v. Colbert, 474 F.2d 174, 176 (5th Cir. 1973); see generally, e.g., Berd, 634 F.2d at 987, United States v. Canady, 615 F.2d 694 (5th Cir.), cert. denied. 449 U.S. 862, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980); United States v. Williams, 569 F.2d 823 (5th Cir. 1978); [United States v.] D'Avanzo, 443 F.2d 1224 [(2d Cir.), cert. denied, 404 U.S. 850, 92 S.Ct. 86, 88, 30 L.Ed.2d 89 (1971)].
 " 'The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object. [Citation omitted.] This determination is to be made by objective standards. United States v. Kendall, 655 F.2d 199, 201 (9th Cir. 1981), cert. denied, 455 U.S. 941, 102 S.Ct. 1434, 71 L.Ed.2d 652 (1982). An expectation of privacy is a question of intent which 'may be inferred from words spoken, acts done, and other objective facts.' "
Carlisle v. State, 533 So.2d 645, 647 (Ala.Cr.App. 1987), quoting United States v. Jones, 707 F.2d 1169, 1172 (10th Cir. 1983), cert. denied, 464 U.S. 859, 104 S.Ct. 184,78 L.Ed.2d 163 (1983). (Emphasis added.)
This court, further explaining the "abandoned property rule," stated the following in *Page 1017 Harrell v. State, 555 So.2d 257, 260 (Ala.Cr.App.), aff'd,555 So.2d 263 (Ala. 1989):
 " ' "In the law of search and seizure . . . the question is whether the defendant has, in discarding property, relinquished his reasonable expectation of privacy so that its seizure and search is reasonable within the limits of the Fourth Amendment. . . . In essence, what is abandoned is not necessarily the defendant's property, but his reasonable expectation of privacy therein. " ' "Where the presence of the police is lawful and the discard occurs in the public place where the defendant cannot reasonably have any continued expectation of privacy in the discarded property, the property will be deemed abandoned for the purposes of search and seizure." ' W. LaFave, 1 Search and Seizure § 2.6(b) at 465, quoting from City of St. Paul v. Vaughn, 306 Minn. 337, 237 N.W.2d 365 (1975)."
(Emphasis added.)
Prior Alabama case law has examined the issue of "abandoned property" where the property was abandoned by "actions" during a police pursuit or investigation. See Coslett v. State,641 So.2d 302 (Ala.Cr.App. 1993) (medicine bottle and plastic bag abandoned when thrown from car window); Smith v. State,623 So.2d 382 (Ala.Cr.App. 1993) (crumpled dollar bill containing crack cocaine abandoned when dropped from defendant's pocket);Atwell v. State, 594 So.2d 202 (Ala.Cr.App. 1991) cert. denied,Inabinett v. State, 594 So.2d 214 (Ala. 1992) (bag of marijuana abandoned when thrown from a speeding truck); Jones v. State,572 So.2d 504 (Ala.Cr.App. 1990) (defendant abandoned a matchbox containing crack cocaine by attempting to throw it from a car window); Barrow v. State, 494 So.2d 834 (Ala.Cr.App. 1986) (car was abandoned when left behind by defendant fleeing the scene of a burglary).
This is Alabama's first opportunity to consider whether words indicating a lack of ownership can constitute abandonment. "A number of courts have held that an abandonment may arise out of a disclaimer of ownership which is made in response to police questioning." W. LaFave, Search and Seizure (3d ed. 1996), § 2.6(b) at 581. Officer Stanley testified that the appellant dropped the keys to the car and denied ownership of the car. The appellant further denied knowing anything about the car. Also, the license plate on the vehicle had been issued for another vehicle. The United States Court of Appeals for the Eleventh Circuit addressed this issue in United States v.McKennon, 814 F.2d 1539, 1546 (11th Cir. 1987), and stated:
 "Whether an abandonment has occurred is a question of intent which can be inferred from words, acts and other objective facts. [United States v.] Pirolli, 673 F.2d [1200] at 1204 [(11th Cir.), cert. denied 459 U.S. 871, 103 S.Ct. 157, 74 L.Ed.2d 131 (1982).] (quoting United States v. Colbert, 474 F.2d 174, 176 (5th Cir. 1973) (en banc)). As this court has observed, the critical inquiry is 'whether the person prejudiced by the search . . . voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.' Pirolli, 673 F.2d at 1204 (quoting Colbert, 474 F.2d at 176) (emphasis added). This court has specifically held that when a claimant relinquishes possession and disclaims ownership of an article of luggage, any expectations of privacy become illegitimate. [United States v.] Hawkins, 681 F.2d [1343] at 1345 [(11th Cir.) cert. denied, 459 U.S. 994, 103 S.Ct. 354, 74 L.Ed.2d 391 (1982).] Thus, repeated disclaimers of ownership prior to a search generally preclude assertions of privacy interests. Hawkins, 681 F.2d at 1345."
(Emphasis added.)
Likewise, in United States v. Hastamorir, 881 F.2d 1551 (11th Cir. 1989), the United States Court of Appeals for the Eleventh Circuit held that the defendant, Hernan Lopez, had abandoned any Fourth Amendment expectation of privacy where he disclaimed any knowledge of or interest in an automobile when he was approached by agents of the United States Customs Service. InHastamorir, Lopez had actually been given permission to drive the vehicle by the owner and codefendant. *Page 1018 
We adopt the reasoning of the Eleventh Circuit inHastamorir and McKennon. Repeated disclaimers of ownership or knowledge prevent challenges under the Fourth Amendment protection of privacy. Here, as in Hastamorir, the appellant abandoned his vehicle by throwing down his keys, disclaiming ownership, and further denying any knowledge of the vehicle. From the appellant's actions and words we infer that he effectively abandoned his expectation of privacy in the Cadillac. Therefore, the search of the Cadillac was lawful and the appellant's Fourth Amendment expectation of privacy was not violated because the car was "abandoned property."
 II
The appellant further contends that he was charged and convicted under a defective indictment, which alleged that the appellant violated § 13-8-18, Code of Alabama 1975, because the Code section was incorrectly stated in the indictment. A voluntary guilty plea waives all nonjurisdictional defects.Prim, supra. This issue has not been preserved for review on appeal because the appellant did not reserve the right to appeal as to this issue. Prim. Further, the miscitation of a Code section in an indictment does not void an indictment that otherwise states an offense. Ex parte Bush, 431 So.2d 563
(Ala.), cert. denied, 464 U.S. 865, 104 S.Ct. 200,78 L.Ed.2d 175 (1983).
For the foregoing reasons, the judgment in this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.